## Steinmetz's Estate.

Argued November 17, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John P. Jordan,* for appellant.

*William I. Stanton,* with him *Joseph R. Stanton, Samuel L. Borton, Russell C. Gourley* and *George A. Butler,* for appellees.

OPINION BY KELLER, P. J., March 18, 1940:

Daniel Steinmetz died testate on January 10, 1891. By his will he directed his real estate to remain in the hands of his executors, the net income to be distributed as follows:

"One third of said net amount shall be paid to my said wife, Emma G. Steinmetz and the remainder shall be equally divided between my children, Daniel, Henry K., Philip J., John, Charles G., Burtis, Emma M., Martha S., and Fannie J., share and share alike.

"This arrangement I desire to continue during the life of my wife, the said Emma G. Steinmetz; at her decease it is my will that my children shall do as they think best; it is however my will (should my children agree to a division of my estate after the death of my wife) that the separate portion of my daughters, Emma M., Martha S., and Fanny J., shall be separately secured to them and their use beyond the dictation of the husband of either of them."

The widow, Emma G. Steinmetz, died on October 11,

1892. Apparently, all of the children survived their father. The three daughters were all married when their father's will was written and when he died. Emma M. (Cobb) died before her mother leaving her husband, William B. Cobb, but no issue. Fanny J. (Cattell) died March 12, 1905, leaving her husband, Edward E. Cattell and no issue; he died March 6, 1936. Martha S. (Duffield) died on January 25, 1931, leaving her husband, Charles H. Duffield, and no issue. This appeal is concerned only with her share. She left a will, of which her husband was appointed executor. He died on January 11, 1938 and A. M. Deeney was appointed administratrix d. b. n. c. t. a. Mrs. Duffield's will is not printed in the record and we do not know what disposition she made of her estate. For reasons hereinafter stated it is not important.

It seems that, following the death of the mother, the real estate of Daniel Steinmetz was sold and the proceeds held by the executors in lieu thereof, as real estate.

Daniel Steinmetz's will came before the Supreme Court for interpretation in 1895 in *Steinmetz's Estate, Duffield's Appeal,* 168 Pa. 171, 31 A. 1070, and *Steinmetz's Estate, Cobb's Appeal,* 168 Pa. 175, 31 A. 1092.

The Supreme Court held that the will created separate use trusts for the daughters; that on the division of the estate the separate portion of each daughter was to be separately secured to her and her use beyond the dictation of her husband; that each daughter was entitled to receive the net revenue from the trust fund as long as she lived and her husband survived and, on the death of her mother had a remainder in fee subject to a separate use trust during her husband's lifetime. The court also held that during the continuance of the separate use trust the daughters could not dispose, by deed or will, of the remainder in fee, which would descend as real estate under the intestate laws.

When Mrs. Cobb and Mrs. Cattell died the interest

of a husband in his wife's real estate, under our intestate laws, was a life interest in the whole estate as tenant by the curtesy: *Dubs v. Dubs,* 31 Pa. 149; *Rank v. Rank,* 120 Pa. 191, 13 A. 827; Act of April 8, 1833, P. L. 315, sec. 1; but the Supreme Court held that by reason of Mrs. Cobb's death during the lifetime of her mother, she was seized of no estate in which her husband took any interest by curtesy.

However, before Mrs. Duffield's death, the intestate laws were changed by the Act of June 7, 1917, P. L. 429, as amended by Act of July 11, 1917, P. L. 755. Wife and husband were put on an equality. The life estates formerly given them as dower and curtesy respectively were superseded by the shares allotted under the provisions of the statute, which were declared to be "in lieu and full satisfaction" of dower and curtesy respectively (secs. 3 & 4). These sections have been ruled to be constitutional: *Scaife v. McKee et al.,* 298 Pa. 33, 148 A. 37.

Since the Intestate Act of 1917 went into effect, the share of a husband in the real and personal estate of his deceased wife, who died intestate, without issue, is fixed by section 2(a) as follows:

"Where such intestate shall leave a spouse surviving and other kindred, but no issue, the surviving spouse shall be entitled to the real or personal estate, or both, to the aggregate value of five thousand dollars, in addition, in the case of a widow, to the widow's exemption as allowed by law; and if such estate shall exceed in value the sum of five thousand dollars, the surviving spouse shall be entitled to the sum of five thousand dollars absolutely, to be chosen by him or her from real or personal estate, or both, and in addition thereto shall be entitled to one-half part of the remaining real and personal estate: Provided That the provisions of this clause *as to said five thousand dollars in value* shall apply only to cases of actual intestacy of husband and wife, entire or partial, and not to cases where the

surviving spouse shall elect to take against the will of the deceased spouse."

On the death of Mrs. Duffield in 1931, her trustee filed his account and on December 8, 1932 the auditing judge awarded the principal ($6277.34) to Charles H. Duffield, her husband, as tenant by the curtesy for his natural life, conditioned upon his entering bond as directed. This was evidently done by a superficial following of the adjudication in the trust estate of Mrs. Cattell, where such an award had been properly made (*Carson v. Fuhs*, 131 Pa. 256, 265, 18 A. 1017; *Dubs v. Dubs*, 31 Pa. 149); and on Mr. Cattell's death in 1936 the principal had been properly distributed among Mrs. Cattell's brothers.

The adjudication on Mrs. Duffield's trust was not excepted to and was confirmed. The husband did not enter security and the trust estate was delivered to a substituted trustee.

On August 19, 1935 Charles H. Duffield filed a petition for review alleging that the adjudication awarding him a life estate as tenant by the curtesy was erroneous; that the Intestate Act of 1917 had abolished curtesy, and distribution should have been made in accordance with the provisions of the Intestate Act of 1917, aforesaid. No intervening rights were affected and the court on September 30, 1938 vacated the original adjudication and recommitted the account for further audit. On April 28, 1939, (after Mr. Duffield's death) the same auditing judge filed a re-adjudication in which he awarded the principal and income to A. M. Deeney, administratrix d. b. n. c. t. a. of Martha Duffield, deceased, to be distributed under the Intestate Act of 1917.

Exceptions were filed by the administrator of the estates of Mrs. Duffield's brothers, who claimed they were entitled to the fund on the death of Mr. Duffield. These exceptions were dismissed and these appeals followed.

We think the case was rightly decided in the court below.

As soon as Mrs. Duffield survived her mother, she immediately became entitled not only to the net income of her share in the real estate, but was also vested with the remainder in fee simple, subject to a separate use trust in her favor, that is to say, an equitable fee simple estate. Under the authorities she could not, as long as her husband lived, dispose of this equitable fee simple by deed, mortgage or will; *MacConnell v. Lindsay,* 131 Pa. 476, 19 A. 306; *Shields v. McAuley,* 205 Pa. 45, 54 A. 491; *Hays v. Leonard,* 155 Pa. 474, 26 A. 664; *Steinmetz's Estate, Cobb's Appeal,* 168 Pa. 175, 31 A. 1092; *Dallett v. Taggart,* 223 Pa. 180, 72 A. 380. The last named case was decided after the Act of June 8, 1893, P. L. 344, which contained the clause, "Hereafter a married woman may dispose of her property, real and personal, by last will and testament ...... in the same manner as if she were unmarried." This is not greatly different in substance from the provisions of section 1 of the Wills Act of June 7, 1917, P. L. 403, "That every person of sound mind and of the age of twenty-one years or upwards, whether married or single, may dispose by will of his or her real estate." While the opinion in *Dallett v. Taggart,* supra, did not specifically refer to the Act of 1893, we cannot assume that it was not considered. Any change in the established law on this point must be made by the Supreme Court, not by us.

If her husband had died before her, she would at once have become entitled to the legal fee simple in her share of the real estate, free and clear of the separate use trust, and could sell, mortgage or devise it, and on her death without having conveyed it away or disposed of it by will it would have passed to her heirs as fixed under the intestate laws in force at the time of her death.

If she died in the lifetime of her husband, her estate in the land or its proceeds, held as land, would likewise

pass to her heirs as fixed by the intestate laws in force at the time of her death. Equitable estates descend in the same manner as legal estates: *Dubs v. Dubs*, 31 Pa. 149; *Van Rensselaer v. Dunkin's Exrs.*, 24 Pa. 252; *Palmer's Est.*, 10 D. & C. 28.

We are not at all concerned here with the heirs of her father, Daniel Steinmetz. By his will, as construed by our Supreme Court, there became vested in his daughter, Mrs. Duffield, on the death of her mother, a fee simple estate, subject to a separate use trust, which prevented her from conveying, mortgaging or disposing of it by will during the lifetime of her husband, but which on her death passed to her heirs, as fixed by the intestate law then—that is, at her death—in force. No one is heir of the living. At one's *death* his or her heirs succeed under the *intestate law then in force.*

One might just as well and just as properly contend that if a grantor conveys land to his grantee, on the death of the latter his heirs are to be determined by the intestate laws in force at the date of the conveyance rather than at the death of the grantee, as contend that the heirs of Mrs. Duffield, who would succeed to her equitable fee simple, should be determined by the intestate laws in force at the date of her father's death, January 10, 1891, or of her mother's death, October 11, 1892.

Hence the determination of the heirs entitled to succeed to the equitable fee simple of Mrs. Cattell, who died in 1905 would have no legal effect in determining the heirs of Mrs. Duffield, who died in 1931, if there was a change in the intestate laws of the Commonwealth between 1905 and 1931, as there was in 1917.

The appellants have cited a number of authorities, which have no application when the problem is reduced to its simplest aspect.

The assignments of error are overruled and the decree is affirmed at the costs of the appellants.